# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | | |
|---|---|---|
| CHARLOTTE MARIE MORRIS, | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 CV 50445 |
| v. | ) | Judge Iain D. Johnston |
| | ) | |
| CAROLYN COLVIN[1], Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Charlotte Marie Morris appeals the administrative denial of her application for disability benefits.  For the reasons given below, the case is remanded for further administrative proceedings consistent with this order.

### Procedural Background

Ms. Morris applied for disability benefits under Titles II and XVI on May 5, 2009, alleging an onset date of September 1, 2007.  Her claims were denied initially on July 20, 2009, and upon reconsideration on December 17, 2009.  On April 19, 2010, she requested a hearing before an Administrative Law Judge, which occurred exactly one year later on April 19, 2011, by video.  Ms. Morris was represented at the hearing by a non-attorney representative.

On April 29, 2011, the ALJ determined that Ms. Morris was not disabled.  On June 3, 2011, she sought review before the Appeals Council, and on June 15, 2011, filed a subsequent application for benefits under both Titles II and XVI.  On September 23, 2011, her subsequent application for benefits was granted and she was found disabled as of March 21, 2011.  As a result, the Appeals Council issued a partially favorable decision in her appeal of the ALJ's April 29, 2011, decision.  In the partially favorable decision, the Appeals Council found her disabled as of March 21, 2011, consistent with the finding on her subsequent application, but adopted the ALJ's findings that she was not disabled before March 21, 2011.  The Appeals Council's decision is the final decision of the Commissioner, and Ms. Morris timely appealed to this Court its adoption of the ALJ's determination that she was not disabled during the period April 22, 2010, through March 20, 2011.

### Hearing Testimony

During the hearing on April 19, 2011, Ms. Morris testified that she cannot work because her knees cause her pain day and night, and even with pain pills she is miserable.  R. 28-29.  She testified that an injection she received to relieve her knee pain wore off after a couple of days,

---

[1] The current Acting Commissioner is automatically substituted under Federal Rule of Civil Procedure 25(d).

and doctors have told her the only relief they can offer is a knee replacement, but that she would not qualify for one until she reached the age of 50 (she was 42 at the time). R. 29-30.

Although she had alleged on onset date of September 1, 2007, she admitted she continued to work as a cashier and stock clerk until April 16, 2010, when her "bone popped" after work. R. 26. She testified that after that incident, she cannot stand more than five to ten minutes, and can walk no more than one-half a block. R. 38. She cannot sit for more than ten minutes, cannot lift more than ten pounds, and occasionally her knee continues to pop out of place "and I will have to hit my leg to beat the bone back in." R. 39. She elevates her legs to reduce swelling in her knees, and uses a cane to keep her balance while walking and to get off the toilet stool, even though her doctor did not prescribe a cane. R. 36-37. She gets her youngest son ready for school each morning, washes dishes, vacuums, and occasionally cooks, but must take a break after about five to ten minutes to rest for half an hour. R. 39, 43. She shops once in a while in a motorized chair, but mostly has others shop for her, and her older son cuts the lawn. R. 40.

Ms. Morris testified that she also suffers from sleep apnea and uses a CPAP machine, but still cannot sleep more than a couple hours at a time. R. 32. She has thyroid and goiter conditions that have been stabilized with medication. R. 33-34. She also takes hydrocortisone and Vicodin, but they leave her drowsy and offer little relief. R. 38. Despite a history of alcohol abuse and liver test results that led her doctor to advise her to stop, she continues to drink because "a beer ain't going to kill you." R. 34-35. She also continues to smoke one pack of cigarettes every two-and-a-half days because she is "stressed out and miserable." R. 35. She testified that the only exercise her doctor ever recommended was swimming, but that she does not know how to swim. R. 41-42. She also testified that her doctor recommended she lose weight, which she was attempting to do by eating baked lamb and chicken rather than pork. R. 33.

According to Ms. Morris, she previously worked as a cashier and dishwasher at McDonald's, as a personal assistant to her mother, and as a mail processor for the U.S. Post Office. R. 27-28. She admitted that she was receiving unemployment insurance by certifying that she was looking for jobs even though she was not looking for jobs because "I have to pay my phone bill and that's the only income I've got coming in." R. 24.

A vocational expert also testified at Ms. Morris' hearing and offered his opinions on the types of work a person Ms. Morris' age with her work experience and education could perform based on hypothetical restrictions presented by the ALJ. The vocational expert testified that a person who could sit, stand and walk at least six hours out of an eight hour day, could lift and carry frequently up to 25 pounds and occasionally 50 pounds and with no other restrictions could perform all of Ms. Morris' prior work. R. 46. He testified that a person limited to sedentary work, who could sit, stand and walk no more than two hours a day, and could lift and carry no more than ten pounds would be precluded from all of Ms. Morris' prior work, but could work other jobs that exist in significant numbers including as a receptionist, general office clerk, and order clerk. *Id.* The expert's opinion was unchanged even if the person with those same restrictions also needed to elevate one leg periodically throughout the day and needed to alternate between standing, sitting, and walking every ten minutes. R. 47. But all work would be precluded if the person was off task 25% of the day or were absent twice a month. *Id.*

## Documentary Evidence

Ms. Morris sought treatment for knee pain since at least June 2005. R. 267-69. On April 9, 2009, Dr. Xerxes Colah performed arthroscopic surgery to remove a torn meniscus in her left knee. R. 286-88. Ms. Morris continued to suffer pain in both knees into 2010 and sought relief from Dr. Carol Sword on February 8, 2010, R. 391, with follow-up visits on April 1, 2010, R. 390, and again on April 12, 2010, after feeling her right knee pop on April 9, 2010[2], R. 389. Dr. Sword referred Ms. Morris for an MRI, R. 389, which revealed a torn meniscus in her right knee and mild to moderate sized effusion, R. 495. Dr. Sword then referred Ms. Morris to Dr. Kevin Draxinger, who scheduled her for an arthroscopy of her right knee. R. 365. Dr. Draxinger performed the arthroscopy on April 28, 2010, which revealed medial femoral condyle osteoarthritis ranging from grade 2 to grade 4 (severe) in some areas. R. 367. In notes from a follow-up visit on May 4, 2010, Dr. Draxinger expressed hope Ms. Morris could resume work by the end of the month, recommended wearing an off-loading brace, and noted his discussion with Ms. Morris about either a unicondylar or total knee replacement, but that her morbid obesity might rule her out as a candidate for the surgery. R. 367.

On July 22, 2010, Dr. Draxinger completed an activity limitations form restricting her to four hours' work each day through September 15, 2010. R. 377. In notes from an examination on September 9, 2010, Dr. Draxinger noted that Ms. Morris was not improving and "cannot really work anymore." R. 376. He also noted that he "suggested she also try to get re-educated so she does not have to stand on her leg all day long as she currently" does. *Id.* On March 21, 2011, Ms. Morris saw Dr. Daniel Woods, who noted Ms. Morris' reports that Vicodin and steroid injections did not control her pain, and that she had been told she was not a candidate for knee replacement surgery because she was too young. Dkt. 382. Dr. Woods stated that he "wrote her a note saying that she is not capable of physical work," and that "[u]ltimately, I do think she will need knee replacement as soon as the orthopedic surgeons feel she is a candidate." *Id.*

## ALJ's Decision

In his written decision, the ALJ found that Ms. Morris had not engaged in substantial gainful activity since September 1, 2007, had the severe impairments of bilateral knee pain and morbid obesity, but her impairments individually or in combination did not equal one of the listed impairments. R. 58-59. The ALJ concluded that Ms. Morris was not disabled because from September 1, 2007, through April 21, 2010, she had the residual functional capacity to perform medium work and was therefore able to perform her past relevant work as a cashier, shift manager, short order cook, mail processor, or personal assistance. R. 59-61. From April 22, 2010, on the ALJ found that Ms. Morris had the residual functional capacity to perform sedentary work except that she could do no more than occasionally stooping, crawling, crouching, kneeling, or climbing, and therefore could work as a receptionist, general office clerk, or order clerk. R. 59, 62.

---

[2] Dr. Sword's notes dated April 12, 2010, report that Ms. Morris felt her knee pop on April 9, 2010, R. 389, one week earlier than the April 16, 2010, date Ms. Morris gave during her testimony to the ALJ, R. 26. The discrepancy does not affect the Court's analysis.

**Analysis**

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). If the Commissioner's decision lacks evidentiary support or adequate discussion, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Ms. Morris asserts that two errors in the decision by the ALJ, as adopted by the Appeals Council, warrant a remand. First, she argues that the ALJ's conclusion that she retained the capacity to do sedentary work was not supported by substantial evidence because it was based on a note from her doctor that actually limited her to working 4 hours a day. Second, she argues that the ALJ's reasons for discrediting her testimony--- her daily activities, her failure to quit smoking and drinking, her use of a cane without a prescription, and statements that she was looking for work when in fact she was not ---were faulty. The Court considers each argument in turn.

**1.      Dr. Draxinger's July 22, 2010, Note**

First, Ms. Morris argues that the ALJ's conclusion that she retained the residual functional capacity to perform sedentary work after April 22, 2010, was not based on substantial evidence. Specifically, she argues that the ALJ based her conclusion in part on a July 22, 2010, note from Dr. Draxinger, even though the note released Ms. Morris to work only four hours a day through September 2010. Under SSR 96-8p, a claimant's residual functional capacity is the "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." *See also Elder v. Astrue*, 529 F.3d 408, 414 (7th Cir. 2008) (ability to work only part-time mandates a finding of disability). As part of her determination that Ms. Morris could perform sedentary work, the ALJ noted the following:

> Dr. Draxinger kept the claimant off work in the summer of 2010, but released her for part-time hours as of September 15, 2010 [R. 377]. Instead, the claimant filed for unemployment compensation and has not returned to Dr. Draxinger.

R. 61. The ALJ misread Dr. Draxinger's note, which actually released her to work four hours a day beginning on July 22, 2010, not September 15, 2010. R. 377. But whether July 22 or September 15, the ALJ fails to explain how the ability to work four hours a day supports her finding that Ms. Morris could sustain full-time work.

In her brief to this Court, the Commissioner offers the missing explanation: Dr. Draxinger suggested on September 9, 2010, that Ms. Morris get re-educated so she could find a job that did not require standing all day, and therefore must have believed she could perform a job that allowed sitting for part of the day. Dkt. 22 at 7 (citing R. 376). But the Commissioner's explanation presents three problems. First, Dr. Draxinger did not state in his note that Ms. Morris could resume work as long as she could sit part of the day, and the Commissioner argues only that "it seems that" Dr. Draxinger thought she could resume work. But Dr. Draxinger's note also states that "[s]he cannot really work anymore." R. 376. Second, although the ALJ quoted the "re-educated" language in Dr. Draxinger's note, she incorrectly attributes the note to Dr. Woods, including citing to Dr. Woods' note rather than Dr. Draxinger's. R. 61. That note from Dr. Woods is dated March 21, 2011, and states that Ms. Morris "is not capable of physical work," which the ALJ fails to acknowledge and which also does not support the conclusion that Ms. Morris could sustain full-time work. And finally, the Commissioner cannot for the first time on appeal supply reasoning missing from the ALJ's decision. *See Liggins v. Colvin*, 593 Fed. Appx. 564, 568 (7th Cir. 2015) (the *Chenery* doctrine prohibits an agency's lawyers from defending an agency decision on grounds the agency itself did not use).

The ALJ correctly noted that the opinions offered by Drs. Draxinger and Woods that Ms. Morris could no longer work are entitled to no weight because the determination of disability is reserved to the Commissioner. *Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010). But to the extent she did rely on Drs. Draxinger and Woods' notes to determine what work Ms. Morris could perform, the ALJ still needed to build a logical bridge between the evidence presented and the conclusion reached. *See Collins v. Astrue*, 324 Fed. Appx. 516, 520 (7th Cir. 2010) (reserving the determination of disability for the Commissioner relieves the ALJ of crediting a doctor's finding of disability, but not the obligation to explain his use of the doctor's other findings). Here, the ALJ failed to explain how her reliance on Dr. Draxinger's notes that Ms. Morris could work part-time (R. 377) and should be re-educated (R. 376 which the ALJ incorrectly attributed to Dr. Woods and cited as R. 382) supported the conclusion that Ms. Morris could work full-time as long as she could sit, in contrast to the doctors' conclusions. Accordingly, the Commissioner's decision must be remanded for an adequate explanation. *See Villano*, 556 F.3d at 562.

## 2. Credibility Determination

Although the ALJ's failure to explain how the doctors' reports support her conclusion that Ms. Morris could perform sedentary work alone requires a remand, for the sake of completeness the Court briefly addresses Ms. Morris' other argument for a remand, namely, a faulty credibility determination. An ALJ's credibility determination will be overturned only if patently wrong, which means lacking support or explanation. *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). Therefore, even though the ALJ's determination is afforded special deference, it still must demonstrate that it was reached "'in a rational manner, logically based on her specific findings and the evidence in the record.'" *Id.* (quoting *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011)).

The ALJ provided the following reasons for discrediting Ms. Morris:

1. "the claimant has been receiving unemployment compensation, contingent upon her certification that she is looking for work, although she admitted at hearing that she is not;"[3]

2. "[f]urther undermining her credibility is the fact that there is no indication in the medical records of the need for a cane or elevation of the lower extremities;"

3. "despite repeated admonitions to quit . . . the claimant continues to smoke and drink alcohol" and "has failed to heed Dr. Woods' advice to exercise;" and

4. "her testimony suggests fairly intact daily activities, including raising an eight year old son as a single parent."

R. 61. The Court agrees with Ms. Morris that the ALJ and Appeals Council did not offer adequate explanations, under controlling Seventh Circuit case law, for how these observations support the conclusion that her testimony lacked credibility. Although this case law appears to impose a higher burden on the ALJ compared to other finders of fact who could simply rely on these types of facts to determine the lack of a witness' credibility, the Seventh Circuit case law controls under these specific circumstances. To begin, an ALJ is permitted to rely on admissions that a claimant lied in the past to determine that she has poor credibility. *Hill v. Astrue*, 295 Fed. Appx. 77, 81-82 (7th Cir. 2008). But the ALJ must explain how a lie on one issue affects her determination of the plaintiff's credibility on other issues. *Id.* Thus, in *Hill*, the ALJ erred by not explaining which parts of a claimant's allegations about conditions such as diabetes, hepatitis, arthritis and glaucoma he did or did not believe because of the claimants "predilections to understate her history of drugs use." *Id.* at 82. Similarly, in *McClesky v. Astrue*, 606 F.3d 351, 353 (7th Cir. 2010), the Seventh Circuit ruled that a determination that a claimant was not disabled must be remanded where an ALJ found that a claimant's "lack of candor about her substance use decreases the credibility of her statements" without considering her possible motivations, such as a fear of admitting a drug offense. Here, the ALJ did not explain which parts of Ms. Morris' testimony she disbelieved because of Ms. Morris' admission that she claimed to be looking for work when she was not, and did not explore her stated motivation that she feared losing her only source of income. *See Richards v. Astrue*, 370 Fed. Appx. 727, 732 (7th Cir. 2010) ("desperate" disability benefits claimant who "sought unemployment benefits only because she had no other source of income . . . might force herself to work---or in this case, certify that she is able to work---but that does not necessarily mean she is not disabled" or credible)

Second, the fact that a claimant uses a cane not prescribed by her doctor is not probative of her need for a cane, and therefore the ALJ has not sufficiently explained how Ms. Morris' use of a cane affected her credibility. *Terry v. Astrue*, 580 F.3d 471, 477-78 (7th Cir. 2000).

---

[3] By remanding, the Court in no way condones Ms. Morris' fraud on the unemployment system and her clear disregard for the law and tax payer dollars. The Court leaves it to the discretion of the Administration to notify the appropriate law enforcement authority about Ms. Morris' admitted bilking of the unemployment system.

Third, although an ALJ can base a credibility determination on a failure to follow a prescribed treatment "clearly expected to restore her capacity to work," *Eakin v. Astrue*, 432 Fed. Appx. 607, 613 (7th Cir. 2011) (internal quotation marks and citation omitted), the ALJ does not identify any evidence that quitting smoking and drinking would have restored Ms. Morris' ability to work.

Finally, the Seventh Circuit has long criticized equating casual household work and the ability the care for one's own children with the ability to work full-time. *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005). Its rationale is especially pertinent when applied to a single mother like Ms. Morris. *Id.* ("Gentle *must* take care of her children, or else abandon them to foster care or perhaps her sister, and the choice may impel her to heroic efforts.").

For these reasons, the ALJ and Appeals Council needed to better explain how each of these factors related to and supported their conclusion that Ms. Morris was not credible. Remand will afford the ALJ the opportunity to build a logical bridge.

## CONCLUSION

For the reasons stated, the plaintiff's motion for summary judgment is granted to the extent that the case is remanded to the Social Security Administration for further proceedings consistent with this order. The Commissioner's motion for summary judgment is denied.

Date: May 26, 2015          By: _____

Iain D. Johnston
United States Magistrate Judge